**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KIMBERLY CHANNEY, *et al.*,

         Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC.,

         Defendant.

Civ. Action No. 16-2213 (EGS/RMM)

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Complaint alleges that Plaintiff Kimberly Channey ("Ms. Channey") was sexually assaulted on or about May 5, 2016, while she was a guest at the Marriott Marquis in Washington, D.C. *See* Notice of Removal, ECF No. 1 ¶ 4. Plaintiffs Ms. Channey and her husband Royce Channey ("Mr. Channey") (collectively, "Plaintiffs" or "the Channeys") have brought spoliation and loss of consortium claims against Defendant Marriott International, Inc. ("Marriott") arising from Ms. Channey's sexual assault at the Marriott Marquis. *See id.* ¶ 5.[1] The case was referred to Magistrate Robin M. Meriweather for full case management. *See* Min. Order, Feb. 3, 2017.

Pending before the Court is Marriott's Motion for Summary Judgment, *see* Mot. for Summ. J. ("Def.'s Mot."), ECF No. 24;

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

1

which the Channeys opposed, *see* Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Opp'n"), ECF No. 26. Magistrate Judge Meriweather issued a Report and Recommendation ("R. & R.") recommending that this Court grant the Motion for Summary Judgment. *See* R. & R., ECF No. 35. The Channeys raise several objections to Magistrate Judge Meriweather's R. & R. *See* Plaintiffs' Objections to Report and Recommendation of Magistrate ("Pls.' Objections"), ECF No. 37 at 1.

Upon careful consideration of the R. & R., the Channeys' objections, and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R., ECF No. 35, and **GRANTS** Marriott's Motion for Summary Judgment, ECF No. 24.

## I.   Background

### A.   Factual Background

On May 5, 2016, Ms. Channey was staying at the Marriott Marquis, a hotel in Washington, D.C., while attending a conference for the American College of Physicians. *See* Def.'s Mot. § II (Def.'s Statement of Material Facts) ("Def.'s SOF") ¶ 1; *see also* Pls.' Opp'n § II (Pls.' Statement of Material Facts) ("Pls.' SOF") ¶ 1. Between approximately 8:00 PM and midnight, Ms. Channey was at the hotel bar with other physicians, and consumed four to five mixed alcoholic beverages. *See* Pls.' Opp'n § II (Pls.' Statement of Material Facts) ("Pls.' SOF") ¶ 2; *see*

2

*also* Def.'s Mot. § 2 (Def.'s Statement of Material Facts) ("Def.'s SOF") ¶ 2. While at the bar, a man in a dark suit and white shirt approached Ms. Channey. *See* Def.'s SOF, ECF No. 24 ¶ 3; Deposition of Kimberly Channey ("Channey Dep."), ECF No. 26-2 at 108:13-16. Ms. Channey testified that she recalled disliking the way the man spoke to her, and that she told the man something akin to "who the F are you?" or "get the F away from me." Pls.' SOF, ECF No. 26 ¶ 4; Def.'s SOF, ECF No. 24 ¶ 9; Channey Dep., ECF No. 26-2 at 108:13-21. While the man was at the bar with Ms. Channey, Ms. Channey took a few sips of her margarita, but stopped drinking it because it tasted bitter. *See* Pls.' SOF, ECF No. 26 ¶ 6; Channey Dep., ECF No. 26-2 at 86:22-23. She did not see the man put anything in her drink, but her back was turned when the man approached her. *See* Def.'s SOF, ECF No. 24 ¶ 10; Channey Dep., ECF No. 26-2 at 108:13-14, 111:8-112:6. Ms. Channey does not recall what happened from the time she stopped drinking her margarita until she woke up the next morning. *See* Pls.' SOF, ECF No. 26 ¶ 7; Def.'s SOF, ECF No. 24 ¶ 4; Channey Dep., ECF No. 26-2 at 108:7-8.

The hotel bartender, Rhachelda Mitchell, testified that the man at the bar drank wine while there. *See* Def.'s SOF, ECF No. 24 ¶ 6; Deposition of Rhachelda Mitchell ("Mitchell Dep."), ECF No. 24-5 at 28:2-3. Ms. Mitchell also testified that Ms. Channey and the man appeared "really friendly" and that the two left the

hotel bar together. *See* Pls.' SOF, ECF No. 26 ¶¶ 3-4; Mitchell
Dep., ECF No. 24-5 at 29:10-16, 31:5-8. Ms. Channey disputes any
characterization of her interactions with the man as
affectionate or reflecting an interest in him. *See* Pls.' SOF,
ECF No. 26 ¶ 3. Instead, she contends that her behavior is
consistent with having been drugged. *See* Pls.' SOF, ECF No. 26 ¶
3. Ms. Channey's account is supported by expert testimony, which
suggests that individuals given a predatory drug may appear to
be functioning "or to even participate" in the interaction with
their assailant. *See* Expert Report of Trinka D. Porrata
("Porrata Rep."), ECF No. 26-4 at 4. Hotel security footage
shows Ms. Channey walking towards the elevators, holding hands
with a man dressed in a dark suit and white shirt. *See* Def.'s
SOF, ECF No. 24 ¶ 3; *see also* Video Stills, ECF No. 24-3. A
hotel lock report shows that Ms. Channey's room was unlocked and
opened at 11:58 pm and re-opened at 12:45 am the next day. *See*
Def.'s SOF, ECF No. 24 ¶ 3; Lock Report Data, ECF No. 24-4 at
11.

When Ms. Channey awoke the next morning, she noticed that
she was naked and still wearing her makeup. *See* Def.'s SOF, ECF
No. 24 ¶ 11; Channey Dep., ECF No. 26-2 at 128:14-16. Upon
examining her room, Ms. Channey found globs of toothpaste in the
sink, washcloths on the floor, clothes strewn across the room,
black curly hairs in her bed, and a wine glass with finger and

4

lip marks. *See* Def.'s SOF, ECF No. 24 ¶ 11; Channey Dep., ECF
No. 26-2 at 130:2-22, 134:2-19. While taking a shower, she
noticed that her genitals felt physically disturbed. *See* Pls.'
SOF, ECF No. 26 ¶ 12; Channey Dep., ECF No. 26-2 at 138:1-4. Ms.
Channey concluded that she had been sexually assaulted and
called hotel security after she had showered. *See* Def.'s SOF,
ECF No. 24 ¶ 12; Channey Dep., ECF No. 26-2 at 136:23-24.

Hotel security subsequently arrived in the room, including
the director of loss prevention, Donnie Womack ("Mr. Womack").
*See* Def.'s SOF, ECF No. 24 ¶ 14; Channey Dep., ECF No. 26-2 at
141:21-142:6. Ms. Channey recalls Mr. Womack telling her that
"you know, sometimes people come here, they have a little thing,
and they just regret it in the morning," and that she should "be
glad this didn't happen to [her] in China. [She] could've woken
up with no kidney." *Id.* at 142:15-17; 143:19-21. Ms. Channey
pointed out to hotel security the items she believed were left
behind by her assailant, including the used wine glass with
fingerprints and lip impressions on the glass, used towels on
the bathroom floor, toothpaste in the sink, and hairs in the
bed. *See* Def.'s SOF, ECF No. 24 ¶ 14; Channey Dep. 141:21-142:6.
Mr. Womack asked Ms. Channey whether she wanted to file a police
report, to which she replied she did not know what she wanted to
do. *See* Channey Dep., ECF No. 26-2 at 142:6-10. However, before
leaving the room, Ms. Channey said "[r]ight now I just want to

5

get medical attention to make sure that I'm okay," and then stated: "Don't touch the room. I will make that decision later." *Id.* at 143:15-17; *see also* Pls.' SOF, ECF No. 26 ¶ 15; Channey Dep., ECF No. 26-2 at 143:15. Ms. Channey states that Mr. Womack assured her that the room would not be cleaned. *Id.* at 143:23-24. Mr. Womack proceeded to contact the hotel's housekeeping department and asked that the room not be cleaned. *See* Def.'s SOF, ECF No. 24 ¶ 16; Def.'s Answer to Pl.'s Interrogs. No 8, ECF No. 24-7. When securing a hotel room that is a crime scene, Marriott employees were trained to use a special key to lock the room. *See* Lynette Banks Dep. ("Banks Dep."), ECF No. 26-6 at 16:17-18:17. However, Mr. Womack did not lock the room. *See* Pls.' Opp'n, Donald Womack Dep. ("Womack Dep."), ECF No. 26-5 at 158:1-20.

Ms. Channey left the hotel and had a rape kit and blood test performed at Washington Hospital Center. *See* Def.'s SOF, ECF No. 24 ¶¶ 18-19; Pls.' SOF, ECF No. 26 ¶ 18. A swab of Ms. Channey's neck yielded a partial DNA profile from an unknown male, unlikely to be her husband. *See* Pls.' SOF, ECF No. 26 ¶ 19; Expert Report of Peter Valentin ("Valentin Rep."), ECF No. 26-15 at 6. A toxicology report showed no evidence of drugs in Ms. Channey's system, except for trace amounts of alcohol and caffeine. *See* Def.'s SOF, ECF No. 24 ¶ 19; Channey Dep., ECF No. 26-2 at 179:5-14. However, according to one of Plaintiffs'

6

experts, a toxicology report showing no evidence of drugs is not conclusive evidence that the victim was not drugged. *See* Pls.' SOF, ECF No. 26 ¶ 19; Porrata Rep., ECF No. 26-4 at 7, 12.

Although Marriott electronically removed the room from its housekeeping list at 12:28 pm on May 6, 2016, a housekeeper entered the room at 1:04 pm and cleaned the room while Ms. Channey was at the hospital. *See* Def.'s SOF, ECF No. 24 ¶ 16. When Ms. Channey returned, she saw that her hotel room had been cleaned, and she screamed. *See* Def.'s SOF, ECF No. 24 ¶ 20; Pls.' SOF, ECF No. 26 ¶ 20; Channey Dep., ECF No. 26-2 at 173:23-25. Ms. Channey promptly left the hotel and returned home. *See* Def.'s SOF, ECF No. 24 ¶ 20; Pls.' SOF, ECF No. 26 ¶ 20; Channey Dep., ECF No. 26-2 at 174:23-25. The following day, Ms. Channey filed a police report by telephone from her home in Michigan. *See* Def.'s SOF, ECF No. 24 ¶ 20; Pls.' SOF, ECF No. 26 ¶ 20; Channey Dep., ECF No. 26-2 at 177:16-178:14.

The investigating detective, Nicole Rizzi, did not order a forensic examination of the hotel room. *See* Def.'s Mot., Deposition of Detective Nicole Rizzi ("Rizzi Dep."), ECF No. 24-6 at 24:3-13. Detective Rizzi noted that "[a]fter the passage of 24, 36 hours . . . especially knowing that the room, even if it had not been reoccupied, if it had been cleaned, there's really not much . . . an examination of that room could yield." *Id.* at 24:14-19. When closing the investigation, Detective Rizzi

7

concluded that there was no evidence that a sexual assault occurred, because "there is no other male DNA that was found on the complainant. We don't have anyone that witnessed the offense. The statements that the complainant did make did not support any – you know, she couldn't remember anything that would be a specific classification of a sexual offense." *Id.* at 50:1-9.

Several experts have also offered opinions through reports and deposition testimony. Relevant here are the opinions offered by the Channey's experts Trinka Porrata and Peter Valentin and Marriott's expert Yale Caplan. *See generally* Porrata Rep., ECF No. 26-4; Valentin Rep., ECF No. 26-15; Expert Report of Yale H. Caplan, PhD ("Caplan Rep."), ECF No. 24-2. Ms. Porrata opines that "[Ms. Channey] was the victim of a drug-facilitated sexual assault, the proper processing of which was impeded by the actions of the Marriott staff" and that "there appears to have been a substantial possibility of identifying the perpetrator through these [allegedly spoliated] evidentiary items." Porrata Rep., ECF No. 26-4 at 11-12. Mr. Valentin is a lecturer in the Forensic Science Department at the University of New Haven and a former major crimes detective. *See* Valentin Rep., ECF No. 26-15 at 1. Mr. Valentin opines that "it's more likely than not that the presence of DNA or fingerprints at the scene would have been useful, would have identified somebody." Pls.' Opp'n, (Valentin

Dep.), ECF No. 26-14 at 69:2-5. Mr. Caplan, in contrast, opines that "there is no forensic or scientific evidence of any kind that suggests or shows that Ms. Channey was drugged by any third person including the man shown in the video," and that "to a reasonable degree of scientific certainty, it is unlikely that Ms. Channey had been given any drugs such as GHB that evening." Caplan Rep., ECF No. 24-2 at 3, 4.

B.   **Procedural Background**

On October 18, 2016, the Channeys filed a claim against Marriott in the Superior Court for the District of Columbia, alleging spoliation of evidence and loss of consortium. *See* Compl., ECF No. 1-3 at 9-10. On November 4, 2016, Marriott removed the case to the United States District Court for the District of Columbia based on diversity jurisdiction. *See* Not. of Removal, ECF No. 1. The case was referred to Magistrate Judge Robin M. Meriweather for full case management, up to but excluding trial, including the preparation of a report and recommendation with respect to any potentially dispositive motions. *See* Min. Order, Feb. 3, 2017.

Pending before this Court is Marriott's motion for summary judgment, *see* Def.'s Mot, ECF No. 24; which the Channeys oppose, *see* Pls.' Opp'n, ECF No. 26. Magistrate Judge Meriweather has issued a R. & R. recommending that this Court grant the Motion for Summary Judgment. *See* R. & R., ECF No. 35. The Channeys have

raised several objections to Magistrate Judge Meriweather's R. &
R.. *See* Pls.' Objections, ECF No. 37 at 1.

## II.  Legal Standard

### A.  Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party
may file specific written objections once a magistrate judge has
entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2).
A district court "may accept, reject or modify the recommended
disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. §
636(b)(1) ("A judge of the court may accept, reject, or modify,
in whole or in part, the findings or recommendations made by the
magistrate judge."). A district court "must determine de novo
any part of the magistrate judge's disposition that has been
properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however,
the party makes only conclusory or general objections, or simply
reiterates his original arguments, the Court reviews the [R. &
R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d
86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly
erroneous standard, the magistrate judge's decision is entitled
to great deference" and "is clearly erroneous only if on the
entire evidence the court is left with the definite and firm
conviction that a mistake has been committed." *Buie v. D.C.*, No.
CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019)

(citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009)) (internal quotation marks omitted).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented to and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

**B.   Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment motions must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of

evidence to support the nonmoving party's case." *Celotex*, 477
U.S. at 325.

In evaluating a summary judgment motion, "[t]he evidence of
the non-movant is to be believed, and all justifiable inferences
are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255
(quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59
(1970)). Summary judgment turns on "whether the evidence
presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail
as a matter of law." *Id.* at 251-52. "[I]f the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party"–and thus a "genuine" dispute over a material fact exists–
then summary judgment is not available. *Id.* at 248.

For purposes of summary judgment, materiality is determined
by the substantive law of the action. *Id.* Accordingly, the
substantive law identifies "which facts are critical and which
facts are irrelevant," and "[o]nly disputes over facts that
might affect the outcome of the suit under the governing law
will properly preclude the entry of summary judgment." *Id.*
Similarly, the applicable substantive evidentiary standards of
the action guide "whether a given factual dispute requires
submission to a jury." *Id.* at 255. The Court's role at the
summary judgment stage "is not . . . to weigh the evidence and

12

determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### C.   **Third-Party Spoliation**

The District of Columbia Court of Appeals first recognized the tort of third-party negligent spoliation in *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846 (D.C. 1998).

Under *Holmes,* a spoliation claim consists of seven elements:

> (1)   existence of a potential civil action;
> (2)   a legal or contractual duty to preserve evidence which is relevant to that action;
> (3)   destruction of that evidence by the duty-bound defendant;
> (4)   significant impairment in the ability to prove the potential civil action;
> (5)   a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence;
> (6)   a significant possibility of success of the potential civil action if the evidence were available; and
> (7)   damages adjusted for the estimated likelihood of success in the potential civil action.

*Holmes*, 710 A.2d at 854.

Although spoliation is not an ordinary tort, its analysis adheres to basic tort principles. Specifically, a plaintiff must prove: a duty; a breach; an injury; and causation. *See id.* at 849 ("To prevail in a tort action generally, a plaintiff must show by a preponderance of the evidence that the defendant

breached a legally cognizable duty to the plaintiff, and that the breach was the proximate and legal cause of ascertainable damages to the plaintiff."). These four components of a tort claim must, however, "be informed by a careful balancing of interests required by the unique features of this tort." *Id.*

The second and third elements of the spoliation tort establish the duty and breach. *See id.* at 849-50, 854. The first, fourth, fifth, and sixth elements of the spoliation tort collectively establish causation. *See id.* at 851-52 (explaining that proximate cause requires a showing "that the defendant's actions proximately caused some level of impairment in the plaintiff's ability to prove an existing underlying civil claim" and that "plaintiff's underlying claim was, at some threshold level, meritorious"). The seventh element provides a means to calculate damages that reflect the degree of impairment that the spoliation caused. *See id.* at 852-53.

### III. Analysis

#### A. The Channeys Do Not Meet Their Burden for a Third-Party Spoliation Claim Against Marriott

Mariott argues that it was under no legal duty to preserve the evidence within Ms. Channey's room, and that even if it did owe her a legal duty, "[w]ithout engaging in utter speculation, it cannot be said that the hotel significantly impaired a

criminal or tort lawsuit or that the hotel significantly impaired Plaintiffs' success in a claim against the third party." Def.'s Mot., ECF No. 24 at 2. In other words, Marriott contests duty, breach, and causation. The Channeys respond that Marriott did have a duty to preserve the evidence in Ms. Channey's hotel room, and that the existence of evidence is not speculative, i.e., that causation exists. *See* Pls.' Opp'n, ECF No. 26 at 20, 27.

Magistrate Judge Meriweather's R. & R. finds that "a reasonable juror could conclude: that Marriott had a duty–it told Ms. Channey it would preserve her hotel room, in her absence, and for her benefit; that Marriott breached this duty–it did not preserve the room; and that the Channeys suffered an injury–they cannot recover in a civil claim against Ms. Channey's assailant." R. & R., ECF No. 35 at 10. However, Magistrate Judge Meriweather concludes that "[b]ecause there is insufficient evidence to support the Channeys' theory of causation, their spoliation claim fails as a matter of law, and summary judgment should be entered in Marriott's favor." *Id.*

The Channeys raise two objections to Magistrate Judge Meriweather's report. First, they argue that Magistrate Judge Meriweather's R. & R. improperly ignores the testimony of the victim. *See* Pl.'s Objections, ECF No. 37 at 4. Second, they argue that she improperly weighs the evidence. *Id.* at 5.

Marriott responds that Magistrate Judge Meriweather was not bound to accept Ms. Channey's testimony without regard to the evidence and that she "correctly concluded Plaintiffs cannot meet their burden to show they had a significant possibility to recover in the underlying tort litigation even with the allegedly spoliated evidence." Def.'s Opp'n, ECF No. 38 at 5. Marriott adds that Magistrate Judge Meriweather's findings must be reviewed with "great deference." *Id.* at 7.

Since the objections raised by the Channeys focus on Magistrate Judge Meriweather's findings as to whether there is "a significant possibility of success of the potential civil action if the evidence were available," *Holmes*, 710 A.2d at 854; that is where the Court focuses its attention.[2] The Court first addresses the question of the standard of review for Magistrate Judge Meriweather's R. &. R., and then discusses each of the Channeys' objections.

### 1. Magistrate Judge Meriweather's R. & R. is Reviewed De Novo

The Channeys argue that Magistrate Judge Meriweather's recommendation should be rejected because it is contrary to

---

[2] Magistrate Judge Meriweather found that the Channeys had met their burden with regards to the first five elements of the spoliation tort. *See generally* R. & R., ECF No. 35. Neither the Channeys nor Marriott contest her findings on the other elements. *See generally* Pls.' Objections, ECF No. 37; Def.'s Opp'n, ECF No. 38.

precedent for granting a motion for summary judgment. *See* Pls.'
Objections, ECF No. 37 at 6. They contend that she ignored
direct testimony from the victim and "improperly weighed
evidence that is solely within the province of the jury to
determine truthfulness." *Id.* Marriott responds that Magistrate
Judge Meriwether's findings must be reviewed with "great
deference" since they are fully consistent with the record and
supported by applicable law. Def.'s Opp'n, ECF No. 38 at 7. The
Court disagrees and reviews the findings de novo.

A district court "must determine de novo any part of the
magistrate judge's disposition that has been properly objected
to." Fed. R. Civ. P. 72(b)(3). Objections must "specifically
identify the portions of the proposed findings and
recommendations to which objection is made and the basis for
objection." LCvR 72.3(b). "If, however, the party makes only
conclusory or general objections, or simply reiterates his
original arguments, the Court reviews the [R. & R.] only for
clear error." *Houlahan*, 979 F. Supp. 2d at 88 (internal citation
omitted). "Under the clearly erroneous standard, the magistrate
judge's decision is entitled to great deference" and "is clearly
erroneous only if on the entire evidence the court is left with

the definite and firm conviction that a mistake has been committed." *Buie*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3.

The question is not, as Marriott suggests, whether Magistrate Judge Meriweather's findings are "fully consistent with the record and are supported by applicable law," Def.'s Opp'n, ECF No. 38 at 7; the question is whether the Channeys "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b).

The Channeys argue that "[i]n assessing the weight of proof of the rape, the Magistrate not only ignored the testimony of the woman assaulted, but also gave no weight to destroyed objects that corroborated an unidentified man [in] the hotel room." Pls.' Objections, ECF No. 37 at 4-5. Next, the Channeys object to Magistrate Judge Meriweather's weighing of expert evidence, arguing that she "improperly sua sponte finds the testimony [of experts] not admissible," "misconstrues the testimony of forensic experts," and "fails to draw inferences in favor of the nonmoving party." *Id.* at 5-6. Although it is a close call, because the Channeys point to specific statements in the R. & R., the Courts find that these are not "conclusory or general objections," *Houlahan*, 979 F. Supp. 2d at 88; but rather

properly specific objections that must be reviewed de novo. *See* Fed. R. Civ. P. 72(b)(3).

### 2. Magistrate Judge Meriweather Did Not Improperly Ignore The Testimony of The Victim

The sixth element of the spoliation tort looks at whether there is a "significant possibility of success of the potential civil action if the evidence were available." *Holmes*, 710 A.2d at 854. The significant possibility standard addresses the level of harm that must be proven, and is a heightened standard, intended to protect a defendant's interest in only providing compensation for conduct that is actually harmful. *See id.* at 850 (standard of proof reflects the interest in "only compensating plaintiff for defendant's harmful negligence or recklessness"). A plaintiff must show "a substantial and realistic possibility of succeeding, but need not cross the threshold of demonstrating that such success was more likely than not, something that would be realistically impractical of proof." *Id.* at 710. The "significant possibility" standard for third-party spoliation differs from the "genuine issue of material fact" standard for summary judgment. To defeat summary judgment, a plaintiff must show a "genuine issue of material fact" such that a reasonable jury "*could* return a verdict for the [plaintiff]." *Liberty Lobby*, 477 U.S. at 248 (emphasis added). To defeat summary judgment in the spoliation claim,

however, a plaintiff must show a "significant possibility" that a reasonable jury *would* have found for the plaintiff on any of her potential civil claims. *See Holmes*, 710 A.2d at 852.

Here, Marriott argues that it is highly unlikely that DNA or fingerprint evidence would have been recovered, and also that such evidence would have led to an identification, proved a sexual act occurred, and shown that the sexual act was non-consensual. *See* Def.'s Mot., ECF No. 24 at 25-28. The Channeys argue that potential DNA and fingerprint evidence uncovered from the hairs in the bedsheets, the used washcloths, the globs of toothpaste in the sink, or used wine glass with fingerprint and lip impressions, combined with Ms. Channey's testimony, the circumstances, her early report of the assault, and the presence of male DNA on her skin, "would allow her a significant possibly of proving that her assailant attempted to (and succeeded) at causing Ms. Channey physical harm." Pls.' Opp'n, ECF No 26 at 36-41.

Magistrate Judge Meriweather concludes in her R. & R. that the Channeys have not met their burden of showing they have a "significant possibility" of convincing a reasonable jury to enter a verdict in their favor because: (1) there is "no significant possibility that the evidence would have identified Ms. Channey's assailant"; (2) "the Channeys have not established that there is a significant possibility that the spoliated

evidence, if preserved, would have shown that a non-consensual sexual act occurred in Ms. Channey's room"; and (3) "even assuming the Channeys could show a "significant possibility" that, but for the spoliation, either an identification would have been made, or a nonconsensual sexual act would have been proved, the Channeys must prove *both* to prevail on their claim." R. & R., ECF No. 35 at 22-24.

The Channeys object that in evaluating whether they have a "significant possibility" of convincing a reasonable jury to enter a verdict in their favor, Magistrate Judge Meriweather "dismissed Mrs. Channey's testimony that she had been sexually assaulted," and that the "spoliated evidence is not material to Mrs. Channey's assertion of sexual assault" because "[h]er testimony provides sufficient foundation for a reasonable jury to believe an assault occurred." Pls.' Objections, ECF No. 37 at 4. Marriott responds that Magistrate Judge Meriweather was not bound to accept Ms. Channey's testimony without also considering evidence that: (1) Ms. Channey did not recall whether an assault occurred; and (2) video and eyewitness testimony showed Ms. Channey consensually walking with the alleged assailant to the elevator. Def.'s Opp'n, ECF No. 38 at 5; *see also* Pls.' SOF, ECF No. 26 ¶ 7. Although the Court has sympathy for the suffering Ms. Channey experienced, and no reason to disbelieve Ms.

Channey's version of events, it cannot conclude that Magistrate
Judge Meriweather improperly ignored Ms. Channey's testimony.

Contrary to the Channeys' assertion, Magistrate Judge
Meriweather's R. &. R. explicitly credits Ms. Channey's
testimony, stating that "a jury *could* rely on Ms. Channey's
impression that her genitals felt disturbed, paired with a
potential recovery of hair or fluids from the bed, to conclude
that a sexual act occurred in the room." R. & R., ECF No. 35 at
4 (emphasis added). However, the question for the Court is not
whether a jury *could* rely on Ms. Channey's impression, but
rather whether the Channeys would have a *significant possibility*
of convincing a reasonable jury to enter a verdict in their
favor if the spoliated evidence were available.

In this case, Ms. Channey's testimony establishes that she
does not recall whether an assault occurred. *See* Pls.' SOF, ECF
No. 26 ¶ 7; Channey Dep., ECF No. 26-2 at 108:7-8. As Marriott
points out, the available evidence, including video and
eyewitness testimony, also does not establish that Ms. Channey
was coerced or forced to have sex with the alleged assailant.
*See* Def.'s Opp'n, ECF No. 38 at 5; Video Stills, ECF No. 24-3.
Most importantly, there is no "significant possibility that the
spoliated evidence, if preserved, would have shown that a non-
consensual sexual act occurred in Ms. Channey's room," because
even if the evidence did identify the perpetrator, it "would not

22

independently demonstrate that he sexually assaulted Ms. Channey or committed other actionable torts." R. & R., ECF No. 35 at 23. The Channeys themselves assert that the "spoliated evidence is not material to Ms. Channey's assertion of sexual assault," but ask the Court to find against Marriott for alleged third-party spoliation regardless because "[Ms. Channey's] testimony provides sufficient foundation for a reasonable jury to believe an assault occurred." Pls.' Objections, ECF No. 37 at 4. The Court cannot logically agree; this case is not one against the alleged *perpetrator*, but against the harm caused by *Marriott's* spoliation.

The Channeys refer the Court to *Greene v. Dalton,* in which the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reversed a trial judge who granted the defendant's summary judgment motion, holding that the judge did not appropriately credit the victim's specific recollection of rape. *See* 164 F.3d 671, 675 (D.C. Cir. 1999). However, the issue in Greene was not third-party spoliation, but solely whether an assault occurred, and the plaintiff had specific recollection of the event. *Id.* at 674. The case therefore does not apply here.

23

The Court concludes that Magistrate Judge Meriweather did not improperly ignore Ms. Channey's testimony.

### 3. Magistrate Judge Meriweather Did Not Improperly Weigh The Evidence

While arguing that there is no "significant possibility" of success for the Channeys even if the spoliated evidence were available, Marriott states that "it is highly unlikely there would be any identifying evidence on any item in the hotel room, and the mere existence of evidence would not lead substantially to an identification of the alleged assailant." Def.'s Mot., ECF No. 24 at 27. In response, the Channeys present expert testimony pointing to various factors that might make an identification more likely, such as the nature of the crime and the state of the crime scene. *See, e.g.,* Porrata Rep., ECF No. 26-4 at 12 (more physical evidence in this case than in a typical drug-facilitated sexual assault case); Valentin Rep., ECF No. 26-15 at 5 ("apparent sophistication of the offender" shows he is likely to be a repeat offender, and thus found in a law enforcement database). Magistrate Judge Meriweather finds in the R. & R. that the experts do not describe any facts "showing the general likelihood of such an identification in a typical case," and that the jury therefore "could not find that there was a "significant possibility" of an identification." R. & R., ECF No. 35 at 22-23. Magistrate Judge Meriweather adds that, to the

contrary, "many factors indicate that an identification was unlikely, such as the wide pool of potential suspects present at a major hotel in a major city, and the relatively narrow pool of prior arrestees and criminal offenders found in law enforcement databases." *Id.* at 23.

The Channeys object that Magistrate Judge Meriweather "misconstrues the testimony of forensic experts and fails to draw inferences in favor of the nonmoving party." Pls.' Objections, ECF No. 27 at 5. They assert that "[a]t a minimum, due process requires that the proponents of the expert testimony be provided a hearing to make a proffer before the Magistrate ruled." *Id.* at 6. Marriott responds that the Channeys "neither point to testimony or any part of their experts' reports that were not considered by [Magistrate] Judge Meriweather nor which would permit a reasonable inference that because DNA was obtained from the room that it had a significant possibility of identifying the alleged assailant." Def.'s Opp'n, ECF No. 38 at 6. Marriott also counters that "[Magistrate] Judge Meriweather had no obligation to permit Plaintiffs to supplement their expert's deposition testimony and reports especially given that discovery closed on August 29, 2018, and Plaintiffs represented to the Court that all discovery was completed in a Joint Status

Report submitted on February 28, 2019." *Id.* The Court agrees on both issues.

Magistrate Judge Meriweather does not misconstrue expert testimony, but rather points out gaps in the testimony, specifically the absence of a baseline on the likelihood of identification, without which it is unlikely that a jury could find a "significant possibility" of identifying the assailant. *See* R. & R., ECF No. 35 at 22-23 (quoting Porrata Dep., ECF No. 26-13 at 96:20-22 (opinion on the likelihood of an identification is "[j]ust based on the likelihood of identifying somebody through fingerprints, when we actually have good fingerprints. It's hard to say."); Valentin Dep., ECF No. 26-14 at 69:12-18 (admitting no experience with the specific probabilities of a DNA or fingerprint match)). Magistrate Judge Meriweather relatedly points out that "although Mr. Valentin cites the number of "hits" returned by forensic evidence, *see* Valentin Rep., ECF No. 26-15 at 5; the Channeys have not provided any evidence of the number of "misses," *i.e.*, when no results are returned at all. *Id.* at 23. The Court cannot conclude that Magistrate Judge Meriweather improperly weighed the evidence when the R. & R. reflects careful consideration of the legal standard, i.e., whether the Channeys can show a

"significant possibility of success of the potential civil action if the evidence were available." *Holmes*, 710 A.2d at 854.

Moreover, as Marriott correctly points out, the Channeys' assertion that "[t]he Magistrate improperly sua sponte finds the testimony not admissible," Pls.' Objections, ECF No. 37 at 6; is a mischaracterization. The parties jointly represented to the Court that discovery was completed. *See* Joint Status Report, February 28, 2019. Magistrate Judge Meriweather was not obligated to hold a hearing to permit additional expert representations. *See generally Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 34-35 (D.D.C. 2013) (stating that a party cannot amend expert reports "whenever they believe such reports would be 'desirable' or 'necessary' to their case" and that "to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation."); *see also Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (holding that supplementation or extension requires that the party seeking relief show that it "cannot reasonably" have met the original deadlines despite its diligence). The Channeys provide no case law to the contrary. *See generally* Pls.' Objections, ECF No. 37.

Therefore, the Court concludes that Magistrate Judge Meriweather did not improperly weigh the evidence.

### B. Loss of Consortium

Magistrate Judge Meriweather agrees with the parties that the loss of consortium claim depends on the spoliation claim. *See* R. & R., ECF No. 35 at 26. Because the Court does not agree with the Channeys' objections to the R. & R., and adopts the recommendation on the spoliation claim, the loss of consortium claim must also fail.

### IV.  Conclusion and Order

For the reasons stated above, the Court

**ADOPTS** Magistrate Judge Meriweather's Report and Recommendation, ECF No. 35; and further

**GRANTS** Defendant's Motion for Summary Judgment, ECF No. 24.

**SO ORDERED.**


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **December 3, 2021**